MEMORANDUM *
Petitioner Morris Rodgers (“Rodgers”) appeals the denial of his § 2254 habeas petition, arguing that a conceded jury instruction error had a substantial and injurious effect on the jury’s verdict in his case. Reciting the facts only as necessary, we affirm.
Rodgers was tried and convicted of aiding and abetting the murder of Kim Gaines and sentenced to twenty-two years to life in prison. The sentence was later reduced to twenty-one years to life. The model aiding and abetting instruction used at trial was later held unconstitutional by the California Supreme Court because it omitted the element that the aider and abettor must share the specific intent of the perpetrator. See People v. Beeman, 35 Cal.3d 547, 199 Cal.Rptr. 60, 674 P.2d 1318 (1984); People v. Caldwell, 36 Cal.3d 210, 203 Cal.Rptr. 433, 681 P.2d 274 (1984). Applying Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), however, the California Court of Appeal determined the error was harmless.
Based on the record before us, we cannot conclude the instructional error “ ‘had substantial and injurious effect or influence in determining the jury’s verdict.’” Brecht v. Abrahamson, 507 U.S. 619, 631, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)); see Fry v. Pliler, 551 U.S. 112, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007).
The record shows that on the night of the shooting, Rodgers, a member of the Nine Oh Hoover Crip gang, met and was *817 drinking with several eo-gang members at a house. During the gathering, the group decided together to start a fight with a nearby rival gang, with whom they were at “war.” Rodgers specifically said “he wanted to knock somebody out,” meaning, according to a witness, that he wanted to fight. Someone else at the gathering suggested they “check out the Deuces,” meaning that the group should engage in a fight with the rival gang, evidently to exact revenge for the death of a Nine Oh member, Trufone Bumpers. The group’s intent at that point, according to one of the gang members, was “to go to war.”
At the scene of the shooting just blocks from the house, Rodgers separated himself from the group along with Avery Smith (“Smith”) and Raymond Flynn (“Flynn”). Rodgers, Smith, and Flynn were then standing side by side with their hands extended in front of them. Shots were fired from among the group, although it was unclear exactly who among the three were holding guns or pulled the trigger. One of the shooting victims testified to seeing “the shadows of three people” as he was hit. Rodgers was himself seen by two witnesses with his arm extended, pointing in the direction where the victims were located. He was also seen fleeing the scene, holding a weapon and pointing it at a bystander.
The evidence therefore establishes at a minimum that: (1) Rodgers was present at the meeting near the scene of the shooting and expressed his desire to fight; (2) the context of this remark was that his gang wanted to “go to war” to avenge the killing of a fellow gang member; (3) Rodgers was at the scene of the shooting, where he, Smith, and Flynn separated themselves from the remainder of the group and all raised their arms, extended toward the victims; (4) shots emanated from the trio, injuring Charles Poole and killing Kim Gaines; and (5) immediately after the shooting, Rodgers was seen fleeing the scene, pointing a weapon at a bystander. The California Court of Appeal concluded there was “no evidence from which the jury could have concluded that Rodgers accompanied the group with some intent other than to encourage” Smith’s and Avery’s criminal actions.
While the jury determined that Rodgers did not personally use a weapon during the fatal shooting, his conviction does not require that he brandished or pointed his weapon during the actual shooting because “the mental state required of an aider and abettor [is] ‘different from the mental state necessary for conviction as the actual perpetrator.’ ” People v. McCoy, 25 Cal.4th 1111, 108 Cal.Rptr.2d 188, 24 P.3d 1210, 1214 (2001) (quoting People v. Mendoza, 18 Cal.4th 1114, 77 Cal.Rptr.2d 428, 959 P.2d 735, 739 (1998)). Aiding and abetting requires only that “the defendant acted ‘with knowledge of the criminal purpose of the perpetrator and with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense.’ ” Id. (quoting Beeman, 199 Cal.Rptr. 60, 674 P.2d at 1325). Because the evidence here establishes at least that much, we cannot conclude that the omission of the intent element from the instructions “ ‘had substantial and injurious effect or influence in determining the jury’s verdict.’ ” Brecht, 507 U.S. at 631, 113 S.Ct. 1710 (quoting Kotteakos, 328 U.S. at 776, 66 S.Ct. 1239).
AFFIRMED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.