Filed 1/27/22  P. v. Newsome CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>ALEXANDER NEWSOME,<br><br>    Defendant and Appellant. | C091725<br><br>(Super. Ct. No. 18FE021033) |

A jury found defendant Alexander Newsome and a codefendant guilty of second degree robbery of victim E.M.  After the court declined to strike his prior strike conviction, defendant was sentenced to an aggregate term of 11 years in state prison.

On appeal, defendant contends: (1) insufficient evidence showed he aided and abetted his codefendants during the robbery; (2) the fees and fines imposed violate his due process rights because the court did not first determine his ability to pay as required by *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*); (3) to the extent he failed to

1

object to the financial obligations when imposed, his counsel was constitutionally ineffective; and (4) the court erred in calculating his actual and conduct credits.

Except for the latter argument, we reject defendant's appellate contentions. Sufficient evidence supports his robbery conviction based on an aiding and abetting theory, and imposition of the mandatory court operations and court facilities assessments, and restitution fines did not violate defendant's due process rights, nor was his counsel ineffective for failing to raise a *Dueñas* inability to pay challenge below. However, based on recent legislative changes, we shall vacate the $250 main jail booking fee. We agree the trial court erred in calculating credits.

We shall modify the judgment to strike the main jail booking fee and to reflect the proper amount of credits to which defendant is entitled, and shall direct the trial court to amend the abstract of judgment accordingly. As so modified, we affirm the judgment.

## I. BACKGROUND

In August 2019, defendant and codefendants, Deandre Fowler and Alexander Smith, were charged with the second degree robbery of E.M. (Pen. Code, § 211.)[1] It was alleged that defendant had suffered a prior serious felony conviction (§ 667, subd. (a)), which was also a strike (§§ 667, subds. (b)-(i), 1170.12). Smith pled guilty prior to trial, and defendant and Fowler were tried jointly before a jury. The following evidence was adduced at trial.

The victim, E.M., testified that one night in October 2018 he attended a Kings basketball game in Sacramento.[2] He had consumed a large quantity of alcohol. After the game, he went to a bar, and then later took the light rail to go home.

---

[1] Further undesignated statutory references are to the Penal Code.

[2] When recalled by the defense, E.M. conceded he did not know that the Kings were not playing in Sacramento that night, and said he must have watched the game while drinking at a bar.

E.M. exited the light rail station at Broadway. He was very intoxicated and was unsure why he got off at that station as it was not his stop. He began talking to a Black man, and they eventually started drinking together.

At some point, E.M. walked towards a bus stop near the Broadway station. On his way back from the bus stop, he met up again with the man he had been talking to and drinking with; a couple of other men were also there. One of the men told E.M. to give him his wallet and whatever else was in his pockets. E.M. began tussling with the men and fell to the ground into some bushes; the men shoved and kicked him. While on the ground, the men took his wallet, which included some personal items and cash. E.M. remembered at least three men physically assaulting him during the robbery. The men ran off after taking his wallet.

Police arrived at the light rail station a short time later and found E.M. near the station platform. E.M., who was visibly intoxicated, told the responding officer that a group of five to six African-American men whom he did not know approached him while near the bus stop and told him to empty his pockets. They punched him and pushed him to the ground. While on the ground, one man reached into his front pants pocket and stole his tan leather wallet that contained $60.

The jury viewed surveillance video of the incident. E.M. could not identify any of the perpetrators in the video, and he did not recognize any of the defendants during trial. One of the men in the video surveillance, later identified as Fowler, was wearing a distinctive black and yellow tie-dyed hooded sweatshirt with his hair in dreadlocks, pulled up into two buns on the sides of his head. Another man, later identified as defendant, was dressed in a black shirt and black pants. The third man, later identified as Smith, was dressed in red shorts and red shoes.

The surveillance video showed Fowler and defendant boarding the light rail train at the stop immediately after E.M. had boarded the train. All three got off the train at the same station. E.M. and Fowler could be seen walking together and then exchanging

3

something that looked like a bottle of liquor and both drank from the bottle. Later, Fowler, Smith, and defendant surrounded E.M., and Fowler and Smith pushed E.M. into the bushes. Fowler and Smith put their hands on E.M. while defendant stood nearby; defendant later stomped on E.M. while Fowler and Smith were attacking him on the ground. After the attack, defendant walked away with Smith, followed by Fowler, and then all three started to run in the same direction.

Fowler was apprehended the following day wearing the same distinctive hooded sweatshirt with the same hairstyle as seen in the surveillance video. He was arrested and taken into custody. During a subsequent search at the jail, officers located a brown leather wallet that belonged to E.M. in Fowler's possession. E.M.'s driver's license and credit card were later found during a search of Smith's home. Defendant's parole agent identified him after viewing the surveillance video.

For the purpose of establishing intent, the prosecutor presented evidence that in 2015 defendant committed a similar robbery with several cohorts at another light rail station against a victim who was a stranger to him. The 2015 victim testified that at least one of the men with defendant hit the victim before stealing his phones, while defendant and the others surrounded him and goaded him to fight back.

The jury found defendant guilty of second degree robbery, and in a subsequent proceeding the trial court found the prior serious felony and prior strike allegations true. After denying defendant's *Romero*[3] motion to strike his strike prior, the trial court sentenced defendant to an aggregate term of 11 years in state prison, including the midterm of three years for the robbery, doubled to six years for the strike prior, plus five years for the prior serious felony conviction.

---

[3] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

The court awarded defendant 572 days of total credit. After first noting that defendant had 491 days of actual credit, the court stated that his conduct credits were limited to 15 percent, or 73 days.[4] However, given that the sheriff had restricted defendant for eight days for jail misconduct, the court stated that it would "take [eight] of his conduct credit days away, which leaves him with a total of 572 days of credit." The abstract of judgment lists 556 days of credit, with 483 actual days and 73 conduct credit days.

The court imposed a $300 restitution fine (§ 1202.4), a $300 parole revocation restitution fine, which was suspended unless parole was revoked (§ 1202.45), a reduced $250 main jail booking fee (former Gov. Code, § 29550.2), a $30 court facilities assessment (Gov. Code, § 70373), and a $40 court operations assessment (§ 1465.8). The court struck a $10 crime prevention fee as well as the costs of the probation report, supervision, and testing. Defendant timely appealed.

## II. DISCUSSION

### A. Aiding and Abetting

Defendant contends insufficient evidence supports his robbery conviction on an aiding and abetting theory. He argues the evidence showed he merely talked with Smith and Fowler, who robbed E.M., and that he watched the robbery take place, but that he did not aid and abet Smith or Fowler during the crime. We conclude the evidence was sufficient to support the jury's finding that defendant aided and abetted a robbery.

Our review of any insufficient evidence claim is limited. If the evidence presented below is subject to differing inferences, the reviewing court must assume that the trier of

---

[4] Section 2933.1 provides that "[n]otwithstanding Section 4019 . . . the maximum credit that may be earned against a period of confinement . . . following arrest and prior to placement in the custody of the Direction of Corrections, shall not exceed 15 percent of the actual period of confinement for any person [convicted of a violent felony offense as defined in § 667.5, subd. (c)]." (§ 2933.1, subd, (c).)

fact resolved all conflicting inferences in favor of the prosecution. (*People v. Alexander* (2010) 49 Cal.4th 846, 883 [appellate court resolves all points on which reasonable persons could differ in favor of judgment]; *People v. Giordano* (2007) 42 Cal.4th 644, 666 [everything that can be presumed will be presumed in favor of the trial court's decision].) We are precluded from making our own subjective determination of guilt because "the relevant question on appeal is not whether *we* are convinced beyond a reasonable doubt, but whether *any* rational trier of fact could have been persuaded beyond a reasonable doubt . . . ." (*People v. Perez* (1992) 2 Cal.4th 1117, 1127.)

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Bolin* (1998) 18 Cal.4th 297, 331.) Reversal for insufficient evidence is unwarranted unless it appears " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*Ibid.*) Given this court's limited role on appeal, and the applicable standard of review, defendant bears an enormous burden in claiming there was insufficient evidence to sustain his conviction for aiding and abetting a robbery.

Robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) " 'A person aids and abets the commission of a crime when he or she, (i) with knowledge of the unlawful purpose of the perpetrator, (ii) and with the intent or purpose of committing, facilitating or encouraging commission of the crime, (iii) by act or advice, aids, promotes, encourages or instigates the commission of the crime.' " (*People v. Hill* (1998) 17 Cal.4th 800, 851.) The mental state necessary for conviction as an aider and abettor thus differs from the mental state necessary for conviction as the actual perpetrator. (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1122.) The actual perpetrator must have whatever mental state is required for each crime charged, and an

6

aider and abettor must act with knowledge of the perpetrator's criminal purpose *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense. (*Ibid.*)

While it is true that mere presence at the scene of a crime, by itself, is insufficient to establish aider and abettor liability, presence is one factor that a jury may consider in determining intent. (*People v. Pitts* (1990) 223 Cal.App.3d 606, 893.) Other factors that may be considered include the defendant's failure to take steps to prevent the commission of the crime, companionship, and conduct before and after the crime. (*Ibid.*)

"For purposes of determining aider and abettor liability, the commission of a robbery continues until all acts constituting the offense have *ceased*." (*People v. Cooper* (1991) 53 Cal.3d 1158, 1164.) Liability for aiding and abetting a robbery continues until the robbers have reached a place of temporary safety. (*Id.* at pp. 1169-1170.)

With these concepts in mind, we conclude there was substantial evidence from which a rational trier of fact could have determined defendant aided and abetted Fowler and Smith in robbing E.M. Surveillance video showed Fowler and defendant exit the light rail station together at the same time as E.M. After Fowler appeared to drink with E.M., a group, including defendant formed a close semicircle around E.M. When Smith suddenly began pushing E.M., Fowler and defendant walked towards the scuffle rather than away like other bystanders. Defendant could also be seen on surveillance video stepping or stomping on E.M. as Fowler and Smith accosted him, and later defendant ran away with Smith and Fowler once they had stolen E.M.'s wallet. By stomping on the victim while Smith and Fowler were attacking him on the ground, and then fleeing with Smith and Fowler after one of them had taken the victim's wallet, defendant was not merely present at the scene of the crime, but actively aided in robbing the victim.

The jury, moreover, heard evidence that defendant had previously been convicted of a strikingly similar robbery at a different light rail station. As instructed, the jury

7

could properly use the evidence of defendant's prior robbery to infer that he harbored the same intent during the incident involving E.M.

Viewing the totality of the evidence in the light most favorable to the judgment, as the applicable standard of review requires (*People v. Bolin, supra,* 18 Cal.4th at p. 331), we conclude the jury could reasonably find that defendant intended to aid and abet Smith and Fowler in robbing E.M.

B.      *Fees and Fines*

The trial court imposed various fines, fees, and assessments at sentencing.  These included a $300 restitution fine (§ 1202.4), a $300 parole revocation restitution fine, which was suspended unless parole was revoked (§ 1202.45), a $250 main jail booking fee (former Gov. Code, § 29550.2), a $30 court facilities assessment (Gov. Code, § 70373), and a $40 court operations assessment (§ 1465.8).

Relying primarily on *Dueñas, supra*, 30 Cal.App.5th 1157, defendant argues the imposition of restitution fines and court operations and court facilities assessments without an ability to pay hearing violated his right to due process.  Alternatively, he contends his counsel was ineffective for failing to object on ability to pay grounds.  The People contend defendant forfeited his *Dueñas* challenge, that the restitution fine was not unconstitutionally excessive, that imposition of the minimal assessments was harmless, and that defendant failed to show his counsel was ineffective.  We are not persuaded that *Dueñas* was correctly decided.

Our Supreme Court is now poised to resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which agreed with the court's conclusion in *Dueñas* that due process requires the trial court to conduct an ability to pay hearing and ascertain a defendant's ability to pay before it imposes court facilities and court operations assessments under section 1465.8 and Government Code section 70373, but found, contrary to *Dueñas*, that the same did not apply for restitution fines under section 1202.4 (*Kopp, supra,* at pp. 95-96).

8

In the meantime, we join those authorities that have concluded the principles of due process do not require a determination of a defendant's present ability to pay before imposing the fines and assessments at issue in *Dueñas* and in this proceeding. (*People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Hicks* (2019) 40 Cal.App.5th 320, 329, rev. granted Nov. 26, 2019, S258946; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.) Having done so, we reject defendant's *Dueñas* challenge to the above-referenced restitution fines and mandatory assessments and his derivative claim of ineffective assistance of counsel. (*People v. Kipp* (1998) 18 Cal.4th 349, 377 [failure to assert a meritless defense does not demonstrate ineffective assistance of counsel].)

While defendant's appeal was pending, the Legislature passed Assembly Bill No. 1869 (2019-2020 Reg. Sess.) (Assembly Bill 1869), which went into effect July 1, 2021. (Stats. 2020, ch. 92, § 11.) The legislation was enacted to "eliminate the range of administrative fees that agencies and courts are authorized to impose to fund elements of the criminal legal system and . . . all outstanding debt incurred as a result of the imposition of administrative fees." (Stats. 2020, ch. 92, § 2.)

Among other things, Assembly Bill 1869 repealed Government Code section 29550.2, which previously authorized the $250 main jail booking fee imposed by the court at sentencing. (See former Gov. Code, § 29550.2.) It also enacted Government Code section 6111, which provides: "On or after July 1, 2021, the unpaid balance of any court-imposed costs pursuant to Section 27712, subdivision (c) or (f) of Section 29550, and Sections 29550.1, 29550.2, and 29550.3, as those sections read on June 30, 2021, is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Gov. Code, § 6111, subd. (a).) Because Assembly Bill 1869 makes the unpaid balance of any main jail booking fee unenforceable and uncollectible, and requires that any portion of a judgment imposing such a fee be vacated, we shall modify the judgment to vacate defendant's $250 main jail booking fee. (See, e.g., *People v.*

9

*Clark* (2021) 67 Cal.App.5th 248, 259-260 [ameliorative changes to law created by Assembly Bill 1869, which requires that certain criminal fees be vacated, applied to case pending on appeal after effective date of legislation].)

C.     *Conduct Credits*

Defendant contends, and the People concede, the court erred in calculating his credits.  We agree.

"Defendants sentenced to prison for criminal conduct are entitled to credit against their terms for all actual days of presentence and postsentence custody." (*People v. Cooper* (2002) 27 Cal.4th 38, 40; see also §§ 2900, subd. (c), 2900.5, subds. (a), (b).) Under the versions of section 4019 then in effect (see former § 4019 [eff. Jan. 1, 2019, to Dec. 31, 2019], and former § 4019 [eff. Jan. 1, 2020, to Dec. 31, 2021]), a defendant detained in a county jail or equivalent facility prior to being sentenced was eligible for presentence conduct credits of up to two days for every four days of actual custody.  (Former § 4019, subd. (f) ["It is the intent of the Legislature that if all days are earned under this section, a term of four days will be deemed to have been served for every two days spent in actual custody"].)  Section 2933.1, subdivision (c) limits the authorized award of presentence conduct credits to a maximum of 15 percent of a defendant's actual period of presentence confinement for certain felons, including those previously convicted of robbery like defendant here.  And conduct credit, once earned, may be forfeited for disciplinary violations during presentence confinement.  (*People v. Buckhalter* (2001) 26 Cal.4th 20, 31.)  Thus, when awarding credits, a trial court must "calculate the exact number of days the defendant has been in custody 'prior to sentencing,' add applicable good behavior credits earned pursuant to section 4019, and reflect the total in the abstract of judgment." (*Id.* at p. 30.)

In this case, the trial court orally awarded defendant 572 days of total credit, although the abstract of judgment lists defendant's total credit award as 556 days.  As we explain below, both calculations were in error.

10

The trial court found that defendant was confined for 491 days before being sentenced and it properly awarded him 491 days of actual credit days at the sentencing hearing. The abstract of judgment, however, erroneously reflects 483 days of actual credits. Where there is a discrepancy between the oral pronouncement of judgment and the abstract of judgment, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186.)

In calculating conduct credits, the court found defendant was eligible for 73 days of conduct credit given section 2933.1's 15 percent limitation (15 percent of 491 actual days equals 73 days), but then supposedly subtracted eight full days for jail misconduct. Rather than subtract eight days, however, it appears the court mistakenly *added* eight days when it arrived at 572 days of total credit (491 actual days, plus 73 conduct days, plus eight additional days equal 572 days). The court thus erred mathematically when calculating defendant's total credit award. It further appears that the abstract of judgment tried to correct this mathematical error by subtracting eight full days from defendant's actual credit time, rather than from his conduct credits (491 actual days minus eight days equals 483 days).

As the parties agree, and we concur, because section 2933.1 limited defendant to earning conduct credit at a rate of 15 percent, the trial court should have subtracted conduct credits utilizing that same 15 percent formula for any jail misbehavior before being sentenced. Thus, the trial court should have subtracted one conduct credit day based on defendant's eight days of jail misconduct (eight days multiplied by 15 percent equals 1.2 days). We shall modify the judgment accordingly.

11

### III.  DISPOSITION

Defendant's conviction is affirmed.  The judgment is modified to vacate the $250 main jail booking fee in light of Assembly Bill 1869, and to award defendant 491 days of actual credit, plus 72 days of conduct credit, for a total of 563 days of credit.  As so modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment and to forward a copy to the Department of Corrections and Rehabilitation.

/S/

_____

RENNER, J.


We concur:


/S/

_____

HULL, Acting P. J.


/S/

_____

MURRAY, J.