Filed 9/9/22 P. v. Singh CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

THE PEOPLE,

    Plaintiff and Respondent,

    v.

BALWINDER SINGH,

    Defendant and Appellant.

F082911

(Tulare Super. Ct. No. PCF405768)

**OPINION**

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Tulare County. Stephen Drew, Judge.

Mi Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P. J., Poochigian, J. and Detjen, J.

# INTRODUCTION

Appellant and defendant Balwinder Singh argued with Surender Kumar (Surender)[1] and stabbed him at least twice, including inflicting a chest wound that nicked an artery and caused extensive internal bleeding. Defendant was charged with attempted premeditated murder. At trial, there was evidence both men had been drinking. Surender testified that defendant stabbed him because he refused to make an insulting TikTok video with defendant. Defendant testified that Surender physically assaulted him, he pulled the knife in self-defense, and Surender was accidentally stabbed.

The court granted defendant's motion to instruct the jury that it could consider evidence of defendant's alleged voluntary intoxication as to whether he had the specific intent to kill required for both the charged offense of attempted murder and the lesser included offense of attempted voluntary manslaughter. When the court read the instruction to the jury, however, it gave the voluntary intoxication instruction as it related to attempted murder but failed to include language that voluntary intoxication was also relevant for the specific intent required for attempted voluntary manslaughter. The court correctly instructed the jury on the defense theories of perfect self-defense and accident.

Defendant was found not guilty of attempted murder and convicted of the lesser included offense of attempted voluntary manslaughter, with enhancements found true for the infliction of great bodily injury and personal use of a deadly weapon. He was sentenced to an aggregate term of seven years in prison.

On appeal, defendant argues the court failed to properly instruct the jury on attempted voluntary manslaughter, specific intent, and voluntary intoxication, and these instructional errors violated his due process right to present a defense and require reversal of his conviction. We affirm.

---

[1] We refer to certain parties by their first names because of their common last names; no disrespect is intended.

## FACTS

Defendant and Surender knew each other because they were from the same village in India. They were both truck drivers but worked for different companies. About 10 or 15 days before the charged incident, defendant called Surender, said he wanted to work for Surender's employer, and asked for the telephone number. Surender said he would talk to his company and let defendant know.

On the evening of November 28, 2020, defendant again called Surender, who lived in Bakersfield. Surender missed the call, called defendant back, and invited him to his house. Defendant said he was at a truck stop in Tulare, asked Surender to meet him there, and again asked for the trucking company's telephone number.

Surender picked up his friend, Mukesh Kumar (Mukesh), and drove to the Flying J. Truck Stop in Tulare. Surender did not drink anything before he left Bakersfield.

Sometime after midnight on November 29, 2020, Surender and Mukesh arrived at the truck stop. They found defendant sitting in his semitruck that was parked in the lot. Surender parked his Audi vehicle near the truck, and they joined defendant in the truck's cab. Surender had brought food and Jameson whiskey for defendant. Defendant ate the food and suggested they have a drink. Surender had two or three cups of whiskey and defendant drank from the bottle. Mukesh testified that he did not drink anything that night.

They ran out of alcohol and defendant suggested they get some more. They got into Surender's car, and he drove to a liquor store. Defendant told him to buy more Jameson, and Surender paid for it. Surender drove back to the truck stop, and the three men returned to the cab of defendant's truck. Surender testified that defendant was the only person who continued to drink; Surender and Mukesh did not drink after they returned from the liquor store.

Surender and Mukesh testified that defendant asked Surender to make a TikTok video with him. Defendant said he wanted to use "cuss" and "abusive" words on the

3.

video about certain people. Surender refused and said he would not say anything abusive about someone.

Surender testified that defendant became angry, said they were from the same village and Surender should help him, and an argument ensued. Surender and Mukesh got out of defendant's truck and went back to their car. Surender testified that as he got out of defendant's truck, defendant made a swinging motion toward him, and he was afraid defendant was going to attack him.

**Defendant Stabs Surender**

Surender got into the driver's seat of his car and Mukesh was in the front passenger seat. Surender felt the effect of his prior drinks, but he was not drunk. Defendant circled around Surender's car, and then got into the front passenger seat and Mukesh moved into the backseat.

Surender testified that he told defendant, "We are from the same village. I came from a distance to meet you. I brought food for you and I came along with my brother, and you are behaving like this to me."

Surender testified that defendant was holding a folding knife, and he listened to defendant with his head bowed. Defendant became angry, pulled out the knife, and stabbed Surender three or four times in the chest and arm while Surender sat in the driver's seat of his car. Mukesh testified that it was dark, and he saw defendant's hand make a stabbing movement, but he did not see the knife.

Surender got out of his car and could not understand what happened. Mukesh helped Surender into the truck stop's convenience store and asked for help. Surender collapsed inside the store and lost consciousness; the employees called 911 and applied pressure to his stab wounds.

**Initial Investigation**

At 12:50 a.m., Officer Brianna Blank of the Tulare Police Department arrived at the truck stop and found Surender lying inside the store. Surender had a stab wound on

4.

the right side of his chest that was about an inch long and actively bleeding; an employee was holding a towel over the wound. Surender was not in possession of a weapon.

Corporal Eric Wilson interviewed Mukesh, who did not speak very much English but directed him to Surender's car, an Audi, that was in the parking lot. Wilson approached the Audi and found defendant sitting in the driver's seat with his head down. The Audi's doors were closed, and the engine was running. Wilson and his partner had to bang on the car doors to get defendant's attention.

Defendant got out of Surender's car. There was a pool of blood on the driver's seat, and blood drops leading from the driver's door to the front of the store.

Corporal Wilson testified that defendant appeared intoxicated, lethargic, and impaired. Wilson did not recall if he smelled alcohol on defendant's breath. Wilson asked defendant if he was injured, and defendant pulled up his pants and pointed to his leg. Defendant did not have any visible injuries. There was a black folding knife in his right pocket, with a blade that was three and one-half inches long.

Later that night, Detective Scott interviewed Mukesh through a telephonic translation service. Mukesh said they went to the truck stop to confront defendant about a TikTok video he previously made.[2] Surender and defendant sat in the front seats of Surender's car, and Mukesh sat in the back seat. Surender and defendant started to argue about the video. Mukesh saw defendant swing his arms at Surender twice, but he did not see a knife.

**Surender's Injuries**

Surender was taken to Kaweah Delta Hospital. The emergency room physician who treated him testified that Surender had two linear lacerations on the right side of his chest that penetrated his chest cavity about three inches, nicked an artery, and resulted in

---

[2] On cross-examination, Mukesh, who testified with the assistance of a translator, denied he previously told an officer that they went to Tulare so Surender could confront defendant about a video defendant previously posted on TikTok.

5.

blood pooling on the right side of his chest. Surender lost a significant amount of blood, approximately two liters, that consisted of 40 percent of his body's volume. He also had a laceration on his left hand, and a cut near his shoulder. Surender remained unconscious in the intensive care ward for three days.

When he was initially treated in the emergency room, Surender's blood-alcohol level was 0.22 percent.

**Surender's Pretrial Statements**

On December 3, 2020, while he was still in the hospital, Detective Scott interviewed Surender with the assistance of a translator. Surender said that he invited defendant to his house in Bakersfield, but defendant never showed up and they eventually made contact in Tulare. When they met, the three men drank alcohol, went to buy more alcohol, and then got into defendant's truck cab to continue drinking.

Surender said they started talking about videos defendant previously posted on TikTok. Surender told Detective Scott that defendant made derogatory comments in the videos about the Punjabi and Muslim cultures. Surender never said that defendant wanted to make a TikTok video with him that night.

Surender said he told defendant to stop making the videos because they would cause problems for their families in India. Surender said defendant was using a knife to cut up food, and he suddenly swung the knife at Surender and cut his hand while they were in the truck's cab.

Surender said he ran to his car and got into the driver's seat. Defendant also ran to the car, got into the passenger seat, and stabbed Surender in the chest once.[3]

---

[3] On cross-examination, Surender admitted he told Detective Scott that they were in the truck's cab, defendant was cutting salad with a knife, and defendant stabbed him in the hand. On further examination, Surender conceded he was not stabbed while he was in defendant's truck, and he may not have been clear when he made his statement about what happened. Surender also testified that his first language was Hindi, but he was interviewed with a Punjabi translator. Surender knew some Punjabi and could

6.

**Defendant's Trial Testimony**

Defendant testified at trial that he had lived in the United States for 25 years. Defendant stated that Surender called and insisted on meeting him in Tulare that night. When Surender arrived, he had a bottle of whiskey, but it was nearly empty, and defendant thought Surender and Mukesh had been drinking during their trip to Tulare.

Defendant testified that Surender and Mukesh got into his truck's cab, and they finished the rest of the bottle. Surender said they needed to buy more liquor, and they went to a liquor store in Surender's car. Surender wanted defendant to return to his home in Bakersfield, but defendant refused. They went back to the truck stop and again got into defendant's truck cab.

Defendant testified that he was drunk, and Surender and Mukesh were more intoxicated that he was.

Defendant testified that he was using a knife to cut lettuce for a salad. Surender and Mukesh wanted defendant to make a TikTok video insulting certain people. Defendant refused. Surender grabbed defendant's neck with both hands, and Mukesh punched defendant in the face three or four times. Defendant told them to get out, and they left the truck.

A few minutes later, defendant got out of his truck to use the restroom at the truck stop. He still had the knife that he used to cut the lettuce. Surender and Mukesh were standing behind Surender's car. Surender walked up to defendant and asked if he called the police. Defendant said no, and that they should leave because they were drunk.

Surender kicked defendant in the leg and groin. Defendant told Surender to stay away from him, but Surender kept coming at him aggressively.

---

understand the translator, but he had problems communicating with that person, who did not know much Hindi.

Defendant testified that he pulled his knife because this was Surender's second attack on him, Mukesh was directly behind Surender, and defendant was afraid both Surender and Mukesh would attack him.

Defendant held the knife in his right hand, extended his arm, and waved around the knife. Surender told defendant that he could not stab him, lunged at defendant, and Surender "got struck with the knife once I think."

Defendant was not trying to stab or kill Surender, he only wanted to scare him, but Surender "was kind of jumping toward me … and I had the knife in my hand and I think maybe once" stabbed him. Defendant insisted the stabbing occurred in the parking lot behind Surender's car, and not in Surender's car.

After defendant stabbed him, Surender and Mukesh went into the store at the truck stop. Defendant testified that he got back into his truck and did not enter Surender's car or start the engine. Defendant was going to call 911 but did not make the call because he figured someone in the store would do that, and he did not know the address of the truck stop. He waited in his truck for the police arrive.

On cross-examination, defendant testified that he was drunk, but he had a clear memory of most of the night. He was interviewed at the scene by an officer, but he was unable to explain what happened because he did not speak English well.

Also on cross-examination, defendant admitted that a TikTok video was made on his account from his cell phone that night, the video showed defendant hold up his knife to the camera, and it could have been the same knife he used to stab Surender. Defendant testified Surender grabbed his cell phone and forced him to make the video.

**Rebuttal**

Detective Scott testified that he interviewed Mukesh at the scene, and Mukesh did not appear intoxicated or impaired. There was no blood or splatter found behind Surender's parked car.

8.

## PROCEDURAL HISTORY

On February 10, 2021, an information was filed in the Superior Court of Tulare County charging defendant with count 1, attempted premeditated murder (Pen. Code, §§ 664, 187, subd. (a)),[4] with the special allegations that defendant personally inflicted great bodily injury (§ 12022.7, subd. (a)) and personally used a deadly or dangerous weapon, a knife (§ 12022, subd. (b)(1)). Defendant pleaded not guilty and denied the special allegations.

On April 14, 2021, defendant's jury trial began.

### Instructional Conference

Defendant's sole appellate contention is that the court failed to correctly instruct the jury on attempted voluntary manslaughter, specific intent, and voluntary manslaughter. We thus turn to the instructions given in this case.

During the instructional conference, the court agreed to instruct the jury on attempted voluntary manslaughter as the lesser included offense of the charged crime of attempted murder.

The court addressed defendant's request for CALCRIM No 3426 on voluntary intoxication. The prosecutor objected because there was insufficient evidence defendant was intoxicated.

The court found there was sufficient evidence defendant was intoxicated based on the officer's testimony about defendant's condition when he was initially contacted in Surender's car. The court agreed the instruction would include language that defendant's voluntary intoxication could undermine his specific intent to kill for the charged offense of attempted premeditated murder.

Defense counsel argued the voluntary intoxication instruction also applied to the lesser included offense of attempted voluntary manslaughter. The prosecutor disagreed

---

[4] All further statutory references are to the Penal Code unless otherwise stated.

because the lesser offense did not require the specific intent to kill and was only a general intent crime.  Defense counsel replied that an attempt to commit voluntary manslaughter was a specific intent crime.

The court said defense counsel was correct.  Defense counsel asked the court to modify CALCRIM No. 3426 on voluntary intoxication so that it also addressed attempted voluntary manslaughter, and the court agreed.

> "[DEFENSE COUNSEL]:  So it applies to both the attempted murder and the lesser included.  And then I ask the Court to strike voluntary intoxication as not a defense to a general intent crime as there is none alleged.
>
> "THE COURT:      Okay.  So you are just saying you may not consider evidence of voluntary intoxication for any other purpose.
>
> "[DEFENSE COUNSEL]:  Right.
>
> "THE COURT:      That's what I'll give."

## THE INSTRUCTIONS

The court gave the following instructions, as relevant to defendant's contentions on appeal about the voluntary intoxication and attempted voluntary manslaughter instructions.

**Intent and Attempted Murder**

The court gave CALCRIM Nos. 600 and 601 on the elements of attempted premeditated murder, which stated in relevant part:

> "The defendant is charged with attempted murder.  To prove that the defendant is guilty of attempted murder the People must prove that:  [¶] One, the defendant took at least one direct but ineffective step towards killing another person.  *And two, the defendant intended to kill that person.*"  (Italics added.)

The court gave CALCRIM No. 251 on intent:

> "… For you to find a person guilty of *the crime of attempted murder* or to find the allegations of great bodily injury and use of a dangerous or deadly weapon true, the person … must not only show he intentionally commit the

10.

prohibited act, but must do so with *a specific intent.* The act and specific intent required are explained in the instruction for that crime or allegation. [¶] *The specific intent required for the crime of attempted murder is intent to kill.*" (Italics added.)

As will be explained below, this instruction did not state that the specific intent was also required for the lesser included offense of attempted voluntary manslaughter, and that it was the intent to kill.

**Attempted Voluntary Manslaughter; Imperfect Self-defense**

The jury was instructed with CALCRIM No. 604, the lesser included offense of attempted voluntary manslaughter based on imperfect self-defense, that stated in relevant part:

> "An attempted killing that would otherwise be attempted murder is reduced to attempted voluntary manslaughter if the defendant attempted to kill a person because he acted in imperfect self-defense. [¶] If you conclude the defendant acted in complete self-defense, his action was lawful and you must find him not guilty of any crime. The difference between complete self-defense and imperfect self-defense depends on whether the defendant's belief in the need to use deadly weapon was reasonable.

> "The defendant acted in imperfect self-defense if: [¶] One, the defendant took at least one direct but ineffective step towards killing a person. [¶] *Two, the defendant intended to kill when he acted.* [¶] Three, the defendant believed that he was in imminent danger of being killed or suffering great bodily injury. [¶] And four, the defendant believed that the immediate use of force was necessary to defend against danger. [¶] But five, at least one of the defendant's belief [*sic*] was unreasonable...."[5] (Italics added.)

**Attempted Voluntary Manslaughter; Heat of Passion**

The jury was next instructed with CALCRIM No. 603, the lesser included offense of attempted voluntary manslaughter based on heat of passion, that stated in relevant part:

---

[5] As will be explained below, the court read the first page of the pattern instruction of CALCRIM No. 604, later realized it omitted additional language, and read the rest of this instruction just before the concluding instructions.

11.

"An attempted killing that would otherwise be attempted murder is reduced to attempted voluntary manslaughter if the defendant attempted to kill someone because of a sudden quarrel or in the heat of passion. [¶] Defendant attempted to kill someone because of a sudden quarrel or in the heat of passion if:

"One, the defendant took at least one direct but ineffective step toward killing a person. [¶] *Two, the defendant intended to kill that person.* [¶] Three, the defendant attempted the killing because he was provoked. [¶] Four, the provocation would have caused a person of average disposition to act rashly and without due deliberation, that is, from passion rather than from judgment. [¶] And give, the attempted killing was a rash act done under the influence of intense emotion that obscured the defendant's reasoning or judgment…. [¶] [The] People have the burden of proving beyond a reasonable doubt that the defendant attempted to kill someone and was not acting as a result of a sudden quarrel or in the heat of passion. If the People have not met this burden, you must find the defendant not guilty of attempted murder." (Italics added.)

## The Enhancements

The court gave CALCRIM Nos. 3145 and 3160 on the enhancements for personal use of a deadly weapon and infliction of great bodily injury, that the jury had to determine if each allegation was true if it found defendant guilty of either attempted murder or attempted voluntary manslaughter. CALCRIM No. 3145 further stated in relevant part that "[s]omeone personally uses a deadly weapon *if he intentionally stabbed [Surender].* [¶] The People have the burden of proving each allegation beyond a reasonable doubt. If the People have not met this burden, you must find that the allegation has not been proved." (Italics added.)

## Voluntary Intoxication

The court next gave CALCRIM No. 3426 on voluntary intoxication.

"You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. *You may consider that evidence only in deciding whether the defendant acted with specific intent.* [¶] A person is voluntarily intoxicated if he or she becomes intoxicated by … willingly using an intoxicating drug, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect. [¶] *In connect with the charge in Count 1*, the People have the burden of

12.

proving beyond a reasonable doubt that the defendant acted *with specific intent to kill.* If the People have not met this burden, you must find the defendant not guilty of attempted murder. *You may not consider evidence of voluntary intoxication for any other purpose.*" (Italics added.)

**Instructions on Complete Defenses**

Defendant relied on two complete defenses. The court gave CALCRIM No. 3404 on accident:

"The defendant … is not guilty of Count 1 or the lesser included offenses *if he acted without the intent required for the crime, but acted instead accidentally.* You may not find the defendant guilty of Count 1 or [the] lesser included offenses unless you are convinced beyond a reasonable doubt that he acted with the required intent." (Italics added.)

The court also gave CALCRIM No. 3470 on perfect self-defense.

"Self-defense is a defense to Count 1 and lesser included offenses. The defendant is not guilty of the crimes if he used force against the other person in a lawful self-defense. The defendant acted in lawful self-defense if: [¶] One, the defendant reasonably believed that he was in imminent danger of being touched unlawfully. [¶] … [T]wo, defendant reasonably believed that the immediate use of force was necessary to defend … against that danger. [¶] And three, the defendant used no more force than was reasonably necessary to defendant against that danger…. [¶] [¶] The People have the burden of proof beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the People have not met this burden, you must find that the defendant [is] not guilty of Count 1 and any lesser included crimes."

**Correction of Instructions**

As the court was about to complete reading the instructions, it advised the parties that it had omitted part of the instruction on imperfect self-defense. The court read the paragraphs from the second page of CALCRIM No. 604 that it had earlier omitted, defining the rest of the elements for attempted voluntary manslaughter based on imperfect self-defense.

"… In evaluating the defendant's belief, consider all the circumstances that were known and appeared to defendant. If you – if you find that [Surender] threatened or harmed the defendant in the past, you may consider that

13.

information in evaluating the defendant's beliefs.  [¶]  The People have the burden of proof beyond a reasonable doubt that the defendant was not acting in imperfect self-defense.  If the People have not met this burden, you must find the defendant not guilty of attempted murder."**6**

**Closing Arguments**

In closing argument, the prosecutor argued the evidence established beyond a reasonable doubt that defendant committed an attempted premeditated murder because he stabbed Surender multiple times, including in the chest, the stabbing was not an accident, and defendant took his time and waited until he got into Surender's car to stab him.  The prosecutor argued the same evidence undermined any claim of imperfect self-defense because defendant intended to kill Surender, and he was not in any immediate danger of being harmed since he was alone in his truck, got out, entered Surender's car, and then started to stab him.

The prosecutor asserted defendant's version was undermined by the evidence of blood inside Surender's car and on the driver's seat, and the blood drops leading from the driver's seat into the store.  There was no evidence of blood behind Surender's car, where defendant claimed the incident occurred.  As for the alternate theory of attempted manslaughter, the prosecutor asserted that a disagreement about a TikTok video was insufficient to constitute provocation and heat of passion.

In her closing argument, defense counsel argued defendant's trial testimony was credible and established that Surender was the aggressor.  Counsel argued Surender's trial testimony was not credible because he gave inconsistent pretrial statements at the hospital about what happened.  Defense counsel acknowledged there were some

---

**6** Defense counsel did not object to the court's reading of the instructions and has not raised any appellate issues based on the sequence.  The general rule is that the order in which instructions are given is immaterial and is left to the sound discretion of the trial court. (*People v. Sanders* (1990) 51 Cal.3d 471, 519; *People v. Carrasco* (1981) 118 Cal.App.3d 936, 942.)  This is particularly true where, as here, the jury was instructed with CALCRIM No. 200, to consider all of the instructions together. (*People v. Sanders,* at p. 519.)

inconsistencies in defendant's testimony as to where the stabbing occurred, but defendant admitted he was drunk that night and may not have remembered what happened, and counsel suggested Surender may have fallen back into the driver's seat of his car after he was stabbed to account for the blood in his vehicle.

Defense counsel argued defendant's testimony was credible, that the two men threatened him, defendant pulled out the knife as a warning, and he acted in self-defense, as stated in CALRIM No. 3470.

Defense counsel acknowledged that if the jury found defendant made a volitional movement with the knife, "meaning he intentionally thrust the knife at Surender, that he intentionally stabbed him, that he intentionally made contact with him, then, it wasn't an accident." If the jury instead believed the stabbing was an accident because Surender lunged at defendant, as defined in CALCRIM No. 3404, then defendant was not guilty of any offense. "And if you find that it was an accident then it's a not guilty verdict. If you find that [defendant] acted in self-defense, it's a not guilty verdict."

Defense counsel further argued the prosecution had to prove beyond a reasonable doubt "that this wasn't an accident and [defendant] didn't act in self-defense, that [he], this middle aged truck driver, father of two wanted to kill this man over a TikTok video? That's what you would need to find my client guilty of attempted murder or attempted involuntary manslaughter." Counsel asked the jury to find defendant not guilty of both attempted murder and attempted voluntary manslaughter.

Defense counsel did not address voluntary intoxication as it related either to attempted murder or attempted voluntary manslaughter.

In rebuttal, the prosecutor noted Surender's pretrial statements were made in the hospital after he lost 40 percent of his blood volume and had been unconscious for three days, and he had problems communicating with the translator. Surender's trial testimony was consistent with Mukesh's account of what happened. The prosecutor argued the evidence undermined defendant's claims that the stabbing occurred behind Surender's car

15.

and in the parking lot, that he only stabbed Surender once by accident, and that the officers arrested him while he was sleeping inside his truck's cab.

Also in rebuttal, the prosecutor addressed the voluntary intoxication instruction, and argued that defendant claimed he was less intoxicated than Surender, so that he was still capable of forming the specific intent to kill him.

**Verdict and Sentence**

On April 16, 2021, the jury found defendant not guilty of attempted murder, and guilty of the lesser included offense of attempted voluntary manslaughter (§§ 664, 192, subd. (a)) and found both special allegations true.

On May 24, 2021, the court imposed an aggregate sentence of seven years, based on the midterm of three years, plus consecutive terms of one year for the deadly weapon enhancement and three years for the great bodily injury enhancement.

The court imposed a restitution fine of $2,100 (§ 1202.4, subd. (b)) and suspended the parole revocation fine in the same amount (§ 1202.45); imposed a court operations assessment of $40 (§ 1465.8) and a criminal conviction assessment of $30 (Gov. Code, § 70373); with victim restitution in an amount to be determined (§ 1202.4, subd. (f)).

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant argues that while the trial court agreed to instruct the jury that voluntary intoxication was relevant to the specific intent required for both attempted murder and attempted voluntary manslaughter, CALCRIM No. 3426 stated that voluntary intoxication was relevant only to attempted murder and did not refer to the lesser included offense of attempted voluntary manslaughter.

Defendant further notes that the attempted voluntary manslaughter instructions in CALCRIM Nos. 603 and 604 correctly stated the offense required the intent to kill, but the court failed to modify CALCRIM No. 251 to state that attempted voluntary manslaughter was a specific intent crime, that would have referred the jury back to the

16.

instruction that voluntary intoxication negated the specific intent to kill for the lesser included offense. Defendant argues these instructional errors were prejudicial.

We begin with the elements of the charged and lesser included offenses, and when an instruction on voluntary intoxication should be given.

## I.      Murder and Manslaughter

"Murder is the unlawful killing of a human being with malice aforethought. [Citation.] Malice may be either express or implied. It is express when the defendant manifests 'a deliberate intention unlawfully to take away the life of a fellow creature.' [Citation.] It is implied 'when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart.' " (*People v. Lasko* (2000) 23 Cal.4th 101, 107, fn. omitted.) "Murder does not require the intent to kill. Implied malice—a conscious disregard for life—suffices." (*People v. Bland* (2002) 28 Cal.4th 313, 327.)

"Manslaughter is 'the unlawful killing of a human being without malice.' [Citation.] A defendant lacks malice and is guilty of voluntary manslaughter in 'limited, explicitly defined circumstances:  either when the defendant acts in a "sudden quarrel or heat of passion" [citation], or when the defendant kills in "unreasonable self-defense" – the unreasonable but good faith belief in having to act in self-defense [citation].' " (*People v. Lasko, supra*, 23 Cal.4th at p. 108.) Imperfect self-defense and heat of passion are not affirmative defenses but shorthand descriptions of the forms of voluntary manslaughter. (*People v. Valenzuela* (2011) 199 Cal.App.4th 1214, 1231–1232.)

Voluntary manslaughter can be committed intentionally, but the specific intent to kill "is not a necessary element of voluntary manslaughter," and voluntary manslaughter is also committed "when one kills unlawfully, and with conscious disregard for life, but lacks malice because of provocation or imperfect self-defense." (*People v. Rios* (2002) 23 Cal.4th 450, 461, fn. 7, italics omitted from original; *People v. Martinez* (2007) 154 Cal.App.4th 314, 335.)

## II.    The Charged and Lesser Included Offenses

An attempt to commit a crime requires the specific intent to commit that crime, even if specific intent is not required to commit the underlying crime. (*People v. Gutierrez* (2003) 112 Cal.App.4th 704, 710.)

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing. [Citation.]" (*People v. Booker* (2011) 51 Cal.4th 141, 177–178; *People v. Mendoza* (1998) 18 Cal.4th 1114, 1123 (*Mendoza*).) "Intent to unlawfully kill and express malice are, in essence, 'one and the same.' " (*People v. Smith* (2005) 37 Cal.4th 733, 739.) Thus, while murder may be premised on a conscious disregard for life, attempted murder requires the specific intent to kill. (*Ibid.*) In addition, the crime of attempted murder is not divided into degrees, but the prosecution may seek a finding that the attempted murder was willful, deliberate, and premeditated for purposes of sentence enhancement. (*Id.* at p. 740.)

In contrast to the completed offense of voluntary manslaughter, the lesser included offense of attempted voluntary manslaughter similarly requires the specific intent to kill. (*People v. Montes* (2003) 112 Cal.App.4th 1543, 1549–1550; *People v. Gutierrez, supra,* 112 Cal.App.4th at p. 710; *People v. Lasko, supra,* 23 Cal.4th at p. 107; *People v. Bland, supra,* 28 Cal.4th at pp. 327–328.)

It is well settled that attempted voluntary manslaughter is a lesser included offense of attempted murder. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.) In this case, the court instructed on attempted murder, with attempted voluntary manslaughter, based on both heat of passion or imperfect self-defense, as the only lesser included offense.

## III.    Voluntary Intoxication

Evidence of voluntary intoxication is admissible only when the defendant is charged with a specific intent crime, and only on the issue of whether the defendant actually formed the required specific intent for that crime. (§ 29.4, subd. (b); *People v.*

*Berg* (2018) 23 Cal.App.5th 959, 965–966; *Mendoza*, *supra*, 18 Cal.4th at pp. 1121–1122, 1124.)

Evidence of voluntary intoxication is admissible to raise a reasonable doubt as to whether defendant had the specific intent required to prove both attempted murder and attempted voluntary manslaughter, since both the charged and lesser included offenses were specific intent crimes. (See, e.g., *People v. Castillo* (1997) 16 Cal.4th 1009, 1016.)

## IV. The Court's Instructional Duties

" 'In criminal cases, even in the absence of a request, a trial court must instruct on general principles of law relevant to the issues raised by the evidence and necessary for the jury's understanding of the case.' [Citation.] That duty extends to ' "instructions on the defendant's theory of the case, including instructions 'as to defenses " 'that the defendant is relying on …, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.' " ' " ' [Citation.] But ' "when a defendant presents evidence to attempt to negate or rebut the prosecution's proof of an element of the offense, a defendant is not presenting a special defense invoking *sua sponte* instructional duties. While a court may well have a duty to give a 'pinpoint' instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces a reasonable doubt, such 'pinpoint' instructions are not required to be given *sua sponte* and must be given only upon request." ' " (*People v. Anderson* (2011) 51 Cal.4th 989, 996–997.)

An instruction on voluntary intoxication is a pinpoint instruction, and the trial court is not required to give this instruction in the absence of a request. (*People v. Bolden* (2002) 29 Cal.4th 515, 559; *People v. Rundle* (2008) 43 Cal.4th 76, 145.) Even upon request, the defendant is entitled to such an instruction only where there is substantial evidence the defendant was intoxicated at the time of the crime. (*People v. Verdugo* (2010) 50 Cal.4th 263, 265; *People v. Williams* (1997) 16 Cal.4th 635, 677.)

## V.    The Instructions Given in This Case

During the instructional conference, defense counsel requested the court to give a pinpoint instruction on voluntary intoxication as relevant to the specific intent required for both the charged offense of attempted murder and the lesser included offense of attempted voluntary manslaughter.  Over the prosecutor's objection, the court found sufficient evidence that defendant was intoxicated, agreed that attempted voluntary manslaughter was also a specific intent offense, and stated it would give the requested instructions for both the charged and lesser included offenses.  The court's legal and factual findings were correct.

As set forth above, the court correctly instructed the jury on the elements of attempted murder in CALCRIM Nos. 600 and 601, and that attempted murder required the intent to kill.  The court instructed the jury with CALCRIM Nos. 603 and 604 on the lesser included offense of attempted voluntary manslaughter, based on both heat of passion and imperfect self-defense, and the instructions correctly stated that both theories of attempted voluntary manslaughter required the intent to kill.

While these instructions correctly defined the charged and lesser included offenses, defendant's claim of instructional error is based on the court's failure to modify the instructions on both intent and voluntary intoxication to address the lesser included offense.[7]  CALCRIM No. 251 correctly stated that to find defendant guilty of attempted murder, or find true the allegations of great bodily injury and use of a dangerous or deadly weapon, "the person … must not only show he intentionally committed the

---

[7] While defense counsel requested the pinpoint instruction on voluntary intoxication as to both attempted murder and attempted voluntary manslaughter, she did not object when the court read the actual instructions to the jury, or claim the instructions were erroneous or misleading.  As previously noted, when the court chooses to give a pinpoint instruction, it must do so correctly.  (*People v. Castillo*, *supra*, 16 Cal.4th at p. 1015.)  Where the defendant asserts that a given instruction was legally incorrect, an objection is not required and the issue may be addressed on appeal.  (*People v. Smithey* (1999) 20 Cal.4th 936, 976–977, fn. 7.)

20.

prohibited act, but must do so with *a specific intent*. The act and specific intent required are explained in the instruction for that crime or allegation," but this instruction also stated: "*The specific intent required for the crime of attempted murder is intent to kill*." (Italics added.) This instruction was not modified to state that attempted voluntary manslaughter also required the specific intent to kill.

CALCRIM No. 3426 on voluntary intoxication correctly stated the jury could consider evidence, if any, of defendant's voluntary intoxication in a limited way, "only in deciding whether the defendant acted with specific intent," but it also stated: "In *connection with the charge in Count 1*, the People have the burden of proving beyond a reasonable doubt that the defendant acted *with specific intent to kill*. If the People have not met this burden, you must find the defendant not guilty of attempted murder. *You may not consider evidence of voluntary intoxication for any other purpose.*" (Italics added.) This instruction was not modified to state that voluntary intoxication could also be considered in determining if defendant acted with the intent to kill required for attempted voluntary manslaughter.

While a trial court does not have a sua sponte duty to instruct on voluntary intoxication, "if it does instruct …, it has to do so correctly." (*Mendoza*, *supra*, 18 Cal.4th at p. 1134.) The court should have modified CALCRIM No. 251 to state that attempted voluntary manslaughter required specific intent, and CALCRIM No. 3426 to state that evidence of voluntary intoxication was also relevant to negate the specific intent required for attempted voluntary manslaughter.

## VI. Prejudice

We must thus determine whether the instructional errors on voluntary intoxication and attempted voluntary manslaughter were prejudicial.

Defendant acknowledges that CALCRIM Nos. 603 and 604 correctly stated the elements of attempted voluntary manslaughter, based on both theories, and that one element was proof of an intent to kill. However, defendant asserts the failure to give

21.

accurate and complete instructions in CALCRIM Nos. 251 and 3426 on specific intent, attempted voluntary manslaughter, and voluntary intoxication removed a factual issue from the jury's consideration, prohibited the jury from considering voluntary intoxication for any purpose other than attempted murder, the omission violated his due process right to present a defense, and the instructional errors are subject to review under *Chapman v. California* (1967) 386 U.S. 18.

Defendant further argues the errors are not harmless beyond a reasonable doubt under *Chapman* because "there is a reasonable likelihood that the jurors applied the instructions in a way that prevented the consideration of constitutionally relevant defense evidence on whether [he] had the specific intent to kill required for attempted voluntary manslaughter, or whether he could not form that intent due to voluntary intoxication. [¶] [¶] Had the jury been instructed that voluntary intoxication could also negate the specific intent required for attempted voluntary manslaughter, it cannot be said beyond a reasonable doubt that the jury would not have acquitted [defendant] of that offense as well."

As previously noted, "[a]though a trial court has no sua sponte duty to give a 'pinpoint' instruction on the relevance of evidence of voluntary intoxication, 'when it does choose to instruct, it must do so correctly.' [Citation.] We apply the 'reasonable probability' test of prejudice to the court's failure to give a legally correct pinpoint instruction." (*People v. Pearson* (2012) 53 Cal.4th 306, 325, fn. omitted.) The failure to give a fully inclusive pinpoint instruction on voluntary intoxication does not deprive a defendant of his due process right to a fair trial and present a defense. (*Id*. at p. 325, fn. 9.)

If the court erroneously instructs the jury on voluntary intoxication as to whether it negates the requisite mental state for an offense, the error is subject to review under *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Atkins* (2001) 25 Cal.4th 76, 93.) An instructional error that limits the jury's consideration of voluntary intoxication evidence

22.

is "subject to the usual standard for state law error," under which " 'the court must reverse only if it also finds a reasonable probability the error affected the verdict adversely to defendant.' " (*Mendoza, supra,* 18 Cal.4th at pp. 1134; *id.* at pp. 1134–1135.)

We review defendant's claims of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) The instructions must be reviewed "as a whole to determine whether it is 'reasonably likely the jury misconstrued the instructions as precluding it from considering' the intoxication evidence" in deciding the lesser included offense of attempted voluntary manslaughter. (*Mendoza, supra*, 18 Cal.4th at p. 1134.) The omission of an instruction on a defense is not prejudicial if the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions. (*People v. Wright* (2006) 40 Cal.4th 81, 98–99.)

Defendant alternatively asserts the instructional errors in this case are still prejudicial under *Watson*: "Given the acquittal on attempted murder, there is a reasonable chance that a properly instructed jury would have determined from the strong and undisputed evidence of [defendant's] voluntary intoxication that he could not form the necessary specific intent to kill. In that event, he would have also been acquitted of attempted voluntary manslaughter." Defendant thus concludes that since the jury acquitted him of attempted murder "after being instructed that voluntary intoxication could negate the specific intent to kill required for attempted murder," there is a reasonable probability under *Watson* "that a properly instructed jury would have determined from the strong and undisputed evidence of [defendant's] voluntary intoxication that he also could not form the necessary specific intent to kill that is required for attempted voluntary manslaughter," and he would have been acquitted.

*Analysis*

We find the instructional errors in this case were not prejudicial based on the entirety of the instructions and the record. First, the jury was correctly instructed on the

23.

elements of attempted voluntary manslaughter under the theories of heat of passion and imperfect self-defense, and that the offense required defendant have the intent to kill under both theories. Defendant was found not guilty of attempted murder, and guilty of the lesser included offense of attempted voluntary manslaughter. We cannot say that this verdict resulted from the jury's finding that defendant's voluntary intoxication negated the specific intent required for attempted murder. Instead, the record equally supports the conclusion that the jury reached these verdicts by relying on either imperfect self-defense or heat of passion, based on the trial evidence about the heated disputed and possible misunderstandings between defendant and Surender, independent of defendant's alleged intoxication.

We further note the court correctly instructed the jury with CALCRIM Nos. 3145 and 3160 on the elements of the enhancements alleged as to both the charged and lesser included offenses – personal use of a deadly weapon and infliction of great bodily injury. These two instructions stated that if the jury found defendant guilty of either attempted murder or attempted voluntary manslaughter, the jury also had to determine if each enhancement was true. Moreover, CALCRIM No. 251 addressed the specific intent required not only for attempted murder but also for the two enhancements: "… For you to find a person guilty of the crime of attempted murder *or to find the allegations of great bodily injury and use of a dangerous or deadly weapon true, the person … must not only show he intentionally commit the prohibited act, but must do so with a specific intent*." (Italics added.) The voluntary intoxication instruction stated the jury could consider evidence, if any, of defendant's voluntary intoxication "only in *deciding whether the defendant acted with specific intent*." (Italics added.)

" 'We presume that jurors comprehend and accept the court's directions. [Citation.] We can, of course, do nothing else. The crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions.' " (*People v. Homick* (2012) 55 Cal.4th 816, 867.) The jury was

24.

instructed that if it convicted defendant of the lesser included offense of attempted voluntary manslaughter, it still had to address the two enhancements, that both enhancements required proof of specific intent, and that it could consider whether evidence of defendant's voluntary intoxication negated the requisite specific intent. The jury herein found defendant not guilty of the charged offense of attempted murder, guilty of the lesser included offense of attempted voluntary manslaughter and, more importantly, found true both enhancements that he personally used a deadly weapon and personally inflicted great bodily injury. The jury's guilty verdict on attempted voluntary manslaughter and true findings on both enhancements show that it rejected any claim that defendant's voluntary intoxication undermined his specific intent in this case, such that any instructional errors were not prejudicial. In addition, by finding the personal use enhancement true, the jury necessarily found the People met the burden of proving beyond a reasonable doubt that defendant "intentionally stabbed" Surender, as stated in CALCRIM No. 3145, further indicating that it rejected his testimony that he did not intentionally stab Surender.

Defendant further argues the instructional errors were prejudicial because the errors prevented the jury from relying on defendant's voluntary intoxication to negate the specific intent required for attempted voluntary manslaughter, and that in the absence of the errors, he would not have been convicted of any offense. In her closing argument, defense counsel did not address any issues regarding voluntary intoxication and attempted voluntary manslaughter. Instead, counsel argued defendant was not guilty of any offense based on either perfect self-defense and/or accident, and cited defendant's trial testimony that Surender initially attacked him in the truck cab, he was afraid of Surender and Mukesh, he pulled his knife in the parking lot because he thought they were both going to attack him, Surender lunged at him and was stabbed once by accident, he never intended to stab Surender, and the stabbing occurred in the parking lot behind Surender's parked car and not inside the car.

25.

The jury was correctly instructed that it could find defendant not guilty of any crime based on either perfect self-defense and/or accident. A person is not guilty of a crime if the act charged was committed "through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence." (§ 26 (5).) "The accident defense amounts to a claim that the defendant acted without forming the mental state necessary to make his or her actions a crime." (*People v. Lara* (1996) 44 Cal.App.4th 102, 110.) "For perfect self-defense, one must actually *and* reasonably believe in the necessity of defending oneself from imminent danger of death or great bodily injury. [Citation.] A killing committed in perfect self-defense is neither murder nor manslaughter; it is justifiable homicide." (*People v. Randle* (2005) 35 Cal.4th 987, 994, overruled on another ground in *People v. Chun* (2009) 45 Cal.4th 1172, 1201.) The defense of perfect self-defense also applies to an attempted killing. (*People v. Randle,* at p. 994.)

"Appellate review under *Watson* … focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*People v. Breverman* (1998) 19 Cal.4th 142, 177.)

It is not reasonably probable that defendant would have been acquitted of all charges absent the instructional error. If the jury found defendant accidentally stabbed Surender or had a reasonable belief in self-defense, it would have found him not guilty of any criminal offense, including attempted voluntary manslaughter, regardless of the voluntary intoxication instruction. Defendant's trial claims of accident and perfect self-defense, and his bid for an acquittal, were undermined by the undisputed physical evidence at the scene. Defendant testified that he pulled the knife in self-defense and

accidentally stabbed Surender when they were standing in the parking lot behind Surender's parked car; it was undisputed there was a pool of blood on the driver's seat of Surender's car, blood drops led into the store, and there was no evidence of blood behind Surender's car. Defendant testified that he stabbed Surender one time when Surender lunged or jumped at him; Surender's treating physician testified that he suffered two linear lacerations on the right side of his chest that penetrated his chest cavity about three inches and nicked an artery, he had another laceration on his left hand and a cut on his shoulder, and that testimony was not disputed. Finally, defendant testified that he got into his truck cab and waited for the police to arrive; it was undisputed that when the officers arrived, defendant was sitting in the driver's seat of Surender's car with the engine running.

We conclude the instructional errors were not prejudicial.

## **DISPOSITION**

The judgment is affirmed.