Filed 11/14/24  P. v. Siekmann CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D082269 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE409972) |
| FORREST SIEKMANN, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of San Diego County, Sherry M. Thompson-Taylor, Judge.  Affirmed.

Belinda Escobosa, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Susan Elizabeth Miller, and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

## I. INTRODUCTION

Forrest Siekmann seeks reversal of his attempted burglary conviction. He claims insufficient evidence supported finding the requisite intent for that

crime and the trial court erred in denying his requested voluntary intoxication jury instruction. Siekmann also seeks to correct the abstract of judgement to reflect the stay of his fines and fees. We agree the abstract of judgment needs correction, but otherwise affirm the judgment.

## II. BACKGROUND

James Bennett lived in a small residential neighborhood in San Diego County. His house sat by itself atop a hill, adjacent to Interstate 8. The only access was a small access road which led to a long driveway up to the house. Given its remoteness, this was not a residence with casual foot traffic walking by it.

In the early morning hours of December 17, 2021, Bennett was home watching television in his bedroom. No lights were on in the house and all the windows and doors were locked. Bennett heard pounding and the doorbell ringing at his front door, prompting him to check his surveillance cameras. Through the live feed that streamed to his phone, Bennett observed Siekmann manipulate the front door handle, put his ear to the door, and then throw his body into it. Siekmann did the same thing at each of the house's entry points, including doors to the garage, laundry room, a bathroom, and a bedroom. Siekmann also attempted to peer into the residence through multiple windows. Siekmann took a few beverages from a cooler on the back patio.

When asked by the 911 dispatcher whether Siekmann appeared under the influence, Bennett replied Siekmann did not "look normal." At trial, Bennett elaborated, adding that Siekmann appeared to be speaking to himself or another person while putting his hands on his head, and pacing back and forth. However, Bennett did not know Siekmann's normal behavior, and Bennett believed Siekmann "knew exactly what he was doing."

2

Bennett also did not observe Siekmann ingest any substances and did not find any drug paraphernalia on his property.

A police helicopter and several San Diego County Sheriff's deputies arrived on the scene in response to Bennett's 911 call. Despite commands from officers in the helicopter and on foot telling Siekmann to stop, he climbed over a fence and crossed Interstate 8. Deputies arrested Siekmann on the other side of the freeway.

During the pursuit a deputy in the police helicopter stated that Siekmann might be drunk or under the influence of a controlled substance. But the arresting officer decided not to conduct any sobriety tests after Siekmann's arrest because the deputy did not see evidence that Siekmann was under the influence. The officers searching Siekmann did not find any drugs or drug paraphernalia.

When interviewed at the police station, Siekmann engaged with deputies in a normal conversational manner; he claimed that he was visiting a friend nearby, walked by Bennett's house, heard a woman screaming inside, and decided to make a welfare check. He acknowledged that he did not know whose house it was and that he could have called 911, but he felt he needed to intervene. Siekmann denied trying to steal anything, and claimed he ran away from the police because he was scared. While being photographed at the police station, the arresting officer had to instruct Siekmann twice to lift his head, and Siekmann also turned left when instructed to turn right. Despite this, Siekmann did not appear to be disoriented, delusional, or hallucinating.

The Office of the San Diego County District Attorney charged Siekmann with resisting an officer (Pen. Code,[1] § 148, subd. (a)(1)) and

---

[1] All subsequent statutory references are to the Penal Code.

attempted first degree burglary, alleging he intended to commit theft inside Bennett's home (§§ 664, 459, 460, subd. (a)). At his trial in 2023, Siekmann asked for a voluntary intoxication instruction under CALCRIM No. 3426.[2] The trial court denied the request, finding it unsupported. The jury ultimately convicted Siekmann of both counts.

The trial court sentenced Siekmann to two years in prison but released him from custody because his credit for time served exceeded the sentence. The court also imposed various fines and fees, which it stayed pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157. Siekmann's timely appeal followed.

## III. DISCUSSION

Siekmann challenges his burglary conviction on two grounds. First, he asserts there was insufficient evidence that he intended to commit theft from Bennett's house. Second, Siekmann argues the trial court erred in denying his requested voluntary intoxication instruction. We find no error on the either ground, but if the trial court committed error on the second issue, we find it harmless. However, we agree with the parties that the abstract of judgment needs correction because, as noted by Siekmann, it does not reflect the stay of his fines and fees.

A.    *Attempted Burglary*

"Burglary is a specific intent crime. [Citation.] It requires not only that a defendant enter a structure, but that he or she do so with a particular objective in mind: larceny (or any other felony)." (*People v. Hendrix* (2022)

---

2    CALCRIM No. 3426 states, "You may consider evidence, if any, of the defendant's voluntary intoxication only in a limited way. You may consider that evidence only in deciding whether the defendant acted [or failed to do an act] with <insert specific intent or mental state required . . . ."

13 Cal.5th 933, 939.) "[L]arceny requires a trespassory taking, which is a taking without the property owner's consent." (*People v. Williams* (2013) 57 Cal.4th 776, 783, italics omitted.) To be guilty of attempted burglary, the defendant must have "specific intent to commit the crime," and take "a direct but ineffectual act . . . toward its commission." (§ 21a.)

## B.     Sufficiency of Burglary Evidence

Siekmann argues insufficient evidence supported the attempted burglary's specific intent requirement. He claims he never attempted to break any of the home's doors or windows, he did not have burglary tools or a bag to store stolen items, his abnormal behavior shows he was mentally impaired, and he was attempting to check on a woman he heard screaming. Siekmann also claims his taking of drinks from the cooler and his flight are inadequate to satisfy the intent requirement.

When a defendant challenges the sufficiency of the evidence supporting a conviction, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' " (*People v. Holmes, McClain and Newborn* (2022) 12 Cal.5th 719, 780.) We do " ' "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." ' " (*People v. Helzer* (2024) 15 Cal.5th 622, 646.) Unless it is clearly shown that " 'on no hypothesis whatever is there sufficient substantial evidence to support the verdict' " we will not reverse. (*People v. Zaun* (2016) 245 Cal.App.4th 1171, 1174.)

" ' " 'While the existence of the specific intent charged at the time of entering a building is necessary to constitute burglary in order to sustain a conviction, this element is rarely susceptible of direct proof and must usually

be inferred from all of the facts and circumstances disclosed by the evidence.' " ' " (*People v. Myles* (2023) 89 Cal.App.5th 711, 734.)

Here, Siekmann approached a house that was completely dark and isolated on a hill. Although no one answered his doorbell rings and knocks, using force, he attempted to gain entry to the residence through five different doors. He also peered through the home's doors and windows and stole drinks from a cooler in the backyard. He then fled when police arrived.

Based on Siekmann's actions, the jury could reasonably infer that he intended to enter Bennett's home to steal something. Although he may have behaved abnormally, Bennett told the jury Siekmann appeared to know exactly what he was doing. The arresting officer also testified that shortly after the incident, Siekmann did not appear to be disoriented, delusional, hallucinating, or under the influence. Further, there was no evidence of what caused Siekmann's behavior.

We also disagree with Siekmann's interpretation of the evidence. Siekmann maintains he had difficulty keeping his eyes open during the police interview, relying on a still image from the interview footage showing him with his eyes closed. However, viewed in its entirety, the footage is inconsistent with this claim. The video recording does not depict Siekmann struggling to keep his eyes open, and the still image Siekmann relies on appears to have been taken when he blinked. Siekmann's assertion that he was nodding his head up and down during the interview is likewise unsupported. This is not depicted in the recording, and when the arresting officer told Siekmann to keep his head up, he was merely instructing Siekmann how to pose while being photographed.

Finally, the jury had a reasonable basis to discredit Siekmann's version of events. Based on the house's location, it is unlikely Siekmann was just

walking by as he claimed. Siekmann also did not attempt to call the police regarding the alleged screams in the home even though he had a phone, and he fled instead of seeking assistance from responding officers. Finally, the surveillance camera at Bennett's front door recorded sound, and it did not capture any statements reflecting the claimed welfare check.

Therefore, based on all the facts and circumstances disclosed by the evidence, the jury could reasonably infer that Siekmann had the requisite intent for attempted burglary. We therefore affirm the conviction on this ground.

## C.     *Voluntary Intoxication Instruction*

Siekmann claims the trial court prejudicially erred in denying his requested voluntary intoxication jury instruction. He asserts the instruction was supported by Bennett's testimony that Siekmann was acting abnormally, the suspicion of the officer in the helicopter that Siekmann was under the influence, and Siekmann's behavior at the police station. He further argues the lack of direct evidence of intoxication, for which he blames the arresting officer, is not dispositive of the instruction's propriety.

"Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent." (§ 29.4, subd. (b).) "A defendant is entitled to a jury instruction on voluntary intoxication only when there is substantial evidence both that the defendant was voluntarily intoxicated and that his intoxication 'affected [his] "actual formation of specific intent." ' " (*People v. Serrano* (2022) 77 Cal.App.5th 902, 918.) Consequently, "Evidence of voluntary intoxication without evidence of its effect on a defendant's ability to formulate specific intent is insufficient to establish the defense." (*Ibid.*)

7

For example, in *People v. Williams* (1997) 16 Cal.4th 635, 677, the intoxication evidence was limited to a few references that the defendant was " 'probably spaced out,' " and " 'doped up' and 'smokin' pretty tough' " around the time he murdered four people. The California Supreme Court found a voluntary intoxication instruction unsupported because "[a]ssuming this scant evidence of defendant's voluntary intoxication would qualify as 'substantial,' there was no evidence at all that voluntary intoxication had any effect on defendant's ability to formulate intent." (*Id*. at pp. 677–678.) Siekmann's case is like *Williams*. Even if we assumed the circumstantial evidence of voluntary intoxication was substantial, there was no evidence the intoxication effected Siekmann's ability to formulate the specific intent to steal something from inside Bennett's home. The trial court properly denied the voluntary intoxication instruction as unsupported.

Even if we assume the trial court erred in denying the instruction, that error would be harmless. (*People v. Mendoza* (1998) 18 Cal.4th 1114, 1134–1135 [voluntary intoxication instruction error is reversible only if there is " 'a reasonable probability the error affected the verdict adversely to defendant' "].) The trial court properly instructed the jury on the intent required for attempted burglary. Although the instructions did not mention voluntary intoxication, they did not preclude the jury from considering it. Additionally, the closing arguments from both sides focused on this issue and were consistent with CALCRIM No. 3426. Siekmann's entire defense was that he was under the influence, preventing him from forming the requisite intent for burglary. And while the prosecutor disputed intoxication, she did not argue the jury could not consider it. Instead, she asserted that even if Siekmann was intoxicated, it was not to such a degree that prevented him from intending to burglarize Bennett's home. Consequently, Siekmann's

sobriety and its effect on his intent were placed squarely before the jury, and it nonetheless found Siekmann guilty. We therefore find no reasonable probability that the lack of a voluntary intoxication instruction adversely affected Siekmann.

Therefore, we affirm the conviction on this ground.

### D. *Correction of Abstract of Judgment*

As conceded by the People, the abstract of judgment does not reflect the trial court's oral pronouncement and minute order staying Siekmann's fines and fees. The trial court shall therefore issue an amended abstract of judgment to correct this discrepancy.

## IV. DISPOSITION

The trial court shall amend the abstract of judgment to reflect the stay of Siekmann's fines and fees.  The judgment is otherwise affirmed.


RUBIN, J.

WE CONCUR:


DATO, Acting P. J.


BUCHANAN, J.